IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEMBLESVILLE HHMO CENTER, LLC, *et al.*, | : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 08-2405 |
| v. | : : : | |
| LANDHOPE REALTY COMPANY, *et al.*, | : : : | |
| Defendants. | : | |

**JONES, II, U.S.D.J.**                                                                               **JULY 27, 2011**

**MEMORANDUM**

Before the Court is Plaintiffs' Motion to Certify Class (Docket No. 32); Defendants' Response (Docket No. 36); Plaintiffs' Reply (Docket No. 40); Defendants' Sur-Reply (Docket No. 41); Plaintiffs' Supplemental Memorandum (Docket No. 50); and Defendants' Supplemental Response (Docket No. 51). The Court heard testimony and argument at a hearing held on December 1, 2010 (Hrg. Tr. at Docket No. 55).

**I.       Background and Relevant Facts**

Since 1978, the site at 1762 New London Road in Kemblesville, Pennsylvania ("NLR Sunoco") has been used by multiple unaffiliated owners as a convenience store and retail gasoline service station. The NLR Sunoco and properties proximate to it obtain water from private supply wells. Those wells are neither uniform nor reach similar depths. There are approximately 179 properties whose boundaries are completely within 2,500 feet of the NLR Sunoco. These properties are at different distances and in different directions from the NLR Sunoco; some are up-gradient, some cross-gradient, and some down-gradient. Furthermore, these properties consist of a variety of zoning types, including commercial, residential, farm,

utilities, exempt, and vacant.

Methyl tertiary butyl ether ("MTBE") is a chemical compound that is created by the chemical reaction of methanol and isobutylene. MTBE is a colorless liquid that dissolves in water and can be challenging to remove therefrom. MTBE has been, although it is no longer, used as a fuel additive in gasoline. Releases from underground storage tanks containing MTBE-treated gasoline can be a source of groundwater contamination. However, MTBE contamination can arise from other sources, including automobile accidents, improper disposal of used motor oil, heating oil, septic systems, above-ground storage tanks, storm water runoff, and the atmosphere. The Pennsylvania Department of Environmental Protection ("PDEP") has set 20 µg/L as the aesthetically acceptable medium-specific concentration of MTBE in potable groundwater – i.e., PDEP uses the limit of a 20 µg/L medium-specific concentration to determine the adequacy of MTBE cleanups performed under Pennsylvania law.

Groundwater containing MTBE was first found at the NLR Sunoco site in 1998 during an investigation undertaken in connection with the sale of the NLR Sunoco by Defendant Landhope to Sunoco. The investigation was eventually overseen by PDEP. PDEP's efforts included the installation and ongoing review of monitoring wells. In 2005, after evaluating the results of subsequent environmental testing in connection with another sale of the NLR Sunoco, Sunoco's environmental engineering consultants discovered an elevated concentration of MTBE in one of its monitoring wells. Thereafter, Sunoco filed a notice of reportable release with PDEP and installed additional monitoring wells on and adjacent to the NLR Sunoco. Sunoco performed groundwater remediation efforts from 2006 onward, including high-vacuum extractions of groundwater as well as operation of both soil vapor extraction and pump and treat systems. Sunoco submitted periodic site characterization reports to PDEP detailing the impact of these

efforts, and Sunoco also filed the results of subsequent rounds of testing.

In May 2006, Sunoco's environmental consultants sent surveys to property owners within a quarter-mile of the NLR Sunoco seeking information on their wells. Many did not reply. Sunoco then sent letters seeking access to groundwater at relevant properties for the purpose of sampling and testing. Forty-three property owners responded and allowed testing to proceed under the oversight of PDEP. Testing in 2009 revealed that two properties located up-gradient from the NLR Sunoco tested in excess of 20 µg/L of MTBE. In total, test results revealed that 10 of the 43 private wells tested positive for any presence of MTBE, eight of which were located within 750 feet of the NLR Sunoco. These properties were dispersed among many properties with wells that did not test positive for MTBE. Several of those wells subsequently tested at lower levels (or no level at all). The most recent round of testing (third quarter 2010) revealed a similarly small number of properties that tested positive for MTBE, with only three properties testing in excess of 20 µg/L and many at only 2 µg/L or below. In total, only 17 properties tested positive for *any* MTBE from 2006 to 2010, and only three of those properties *ever* tested in excess of 20 µg/L.[1]  Pl's Ex. 1; Def's Ex's 1-4; Hrg. Tr. at 45, 65, 75, 95. All properties that ever tested positive for MTBE were located within 1500 feet of the NLR Sunoco, and the majority were located within 750 feet of that site. See Hrg. Tr. at 75.

PDEP did not ask Sunoco to expand its sampling program, and PDEP is now working with Sunoco to end the remediation programs. Hrg. Tr. at 60-61, 77. Plaintiffs' hydrogeologist has testified that Sunoco "effectively remediated the impacts on site." Id. at 53.

---

[1] Some of these properties have only tested positive for MTBE once – i.e., they tested positive in the past and now effectively test zero – so there are in reality only 14 properties currently reflecting the presence of MTBE. The Court will err on the side of inclusion, however, and analyze this matter with the understanding that there are 17 properties that have tested positive for MTBE at some point in time. Hrg. Tr. at 48-49, 77, 123.

In the instant lawsuit, Plaintiffs are property owners who are bringing claims under the Pennsylvania Storage Tank and Spill Prevention Act, 35 PA. CONS. STAT. § 6021.101 et seq. (1989) ("Tank Act"), as well as Pennsylvania common law.[2]  Defendants are former owners or current franchisors/operators of the NLR Sunoco.  Essentially, Plaintiffs contend that: (1) the NLR Sunoco is the source of the MTBE detected in groundwater at the properties which tested positive for MTBE; (2) an alleged MTBE "plume" has spread and will continue to spread to nearby properties; and (3) as a result nearby properties have suffered damages.  Defendants maintain that the initial and subsequent MTBE levels are the result of a limited release and remediation, and that any MTBE "plume" is small and will continue to shrink with time.  Defendants further contend that Plaintiffs have advanced no credible evidence or theory of a uniform spread of MTBE, as evidenced by MTBE-free properties being interspersed among MTBE-positive properties as well as the lack of sufficient expert opinions.

## II.     Legal Standard

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979).  Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." Id. at 701.  The class action device is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano, 442 U.S. at 701).

---

[2] This case was removed from state court by Defendants pursuant to the Energy Policy Act of 2005, 42 U.S.C.S. § 7545 (2009).

"The district court has a good deal of discretion in determining whether or not to certify a class." Mazus v. Dep't of Transp., 629 F.2d 870, 876 (3d Cir. 1980); see also Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). As the Honorable Gene E.K. Pratter of this District has observed, this broad discretion "often produces wholly different results in actually or ostensibly similar situations." Gates v. Rohm & Haas Co., 265 F.R.D. 208, 213 n.9 (E.D. Pa. 2010) (citing In re Welding Fume Prods. Liab. Litig., 245 F.R.D. 279, 304 (N.D. Ohio 2007) ("It is easy to find cases . . . where a court granted class certification to plaintiffs . . ., and just as easy to find cases where a court denied certification under similar conditions – and there is no obvious or simple way to reconcile the two different results.")).

Plaintiffs who seek class certification bear the burden of proving that all of the requirements for class certification are met. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). As a threshold matter, the proposed class must be sufficiently defined. In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995). In addition to satisfying that prerequisite, plaintiffs must also satisfy the requirements of Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23; Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).[3] "The

---

[3] Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (known as "numerosity"); (2) there are questions of law or fact common to the class (known as "commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (known as "typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class (known as "adequacy"). Fed. R. Civ. P. 23; In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009). Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. In re Constar, 585 F.3d at 780. Plaintiffs here seek certification under Rule 23(b)(3), which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) predominance inquiry can be especially dependent upon the merits of a plaintiff's claim, since "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." In re Constar, 585 F.3d at

requirements set out in Rule 23 are not mere pleading rules." In re Hydrogen Peroxide, 552 F.3d 305, 311 (3d Cir. 2008). Although courts have discretion in Rule 23 matters, the law requires that each Rule 23 component be satisfied or a class cannot be certified. Id. at 316-17 n.15. A request for class certification requires a "rigorous analysis" in which a court must "assess all of the relevant evidence admitted at the class certification stage." In re Constar, 585 F.3d at 779 (citing In re Hydrogen Peroxide, 552 F.3d at 317, 323).[4]

## III.    Discussion

Plaintiffs seek certification of a diminution in property value class (i.e., "stigma class") of all owners and residents of real property within a 2,500 foot radius of the NLR Sunoco. See Pl's Motion to Certify Class, passim. The U.S. Court of Appeals for the Third Circuit has held that eligibility for stigma damages entails three elements: "(1) defendants have caused some (temporary) physical damage to plaintiffs' property; (2) plaintiffs demonstrate that repair of this damage will not restore the value of the property to its prior level; and (3) plaintiffs show that

---

780 (quoting In re Hydrogen Peroxide, 552 F.3d at 311). If proof of the essential elements of a cause of action requires individual treatment, then predominance is defeated and a class should not be certified. In re Hydrogen Peroxide, 552 F.3d at 311 (quotation omitted).

[4] Where appropriate, district courts are to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." In re Hydrogen Peroxide, 552 F.3d at 316 (quoting Newton v. Merrill Lynch, 259 F.3d 154, 167 (3d Cir. 2001)). Courts must resolve factual or legal disputes relevant to class certification, even if they overlap with the merits – i.e., "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." Id. at 307, 316. Because of this, a court's analysis may include a preliminary inquiry into the merits, and the court may consider the substantive elements of the plaintiff's case in order to envision the form that a trial on those issues would take. Id. at 317. Any factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide, 552 F.3d at 317 (citations omitted). Weighing conflicting expert testimony . . . is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." Id. at 323. It is permissible for a court to find it unnecessary to consider certain expert opinion with respect to a certification requirement, but it may not decline to resolve a genuine legal or factual dispute relevant to class certification. Id. at 324.

there is some ongoing risk to their land." In re Paoli R.R. Yard PCB Litig. ("Paoli II"), 35 F.3d 717, 798 (3d Cir. 1994). "Paoli II specifically requires proof of some real physical damage to plaintiffs' land, some damage that 'exists in fact' as opposed to damage caused by negative publicity alone." In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 462-63 (3d Cir. 1997).

In support of their Motion, Plaintiffs have offered three experts:  a hydrogeologist for opinions as to the release of MTBE into groundwater; an attorney for opinions as to property owners' potential MTBE-related disclosure duties to future purchasers of their properties; and a real estate appraiser for opinions relevant to property value.  Plaintiffs maintain that they have satisfied all requirements for certification of the proposed class.  In their opposition to the Motion, Defendants contend that: (1) the proposed class is overly broad and ill-defined; (2) Plaintiffs have not demonstrated that joinder is impractical pursuant to Rule 23(a)(1); (3) Plaintiffs have not met the typicality requirement of Rule 23(a)(3); (4) the proposed class violates Rule 23(a)(4) because it consists of groups with conflicting interests; and (5) the proposed class does not pass muster under Rule 23(b)(3) because individual issues predominate, and thus a class action is not the superior method of adjudicating this matter.

### A.     Overbreadth

"A prerequisite to a Rule 23 action is the actual existence of a 'class.'"  See, e.g., Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 266 (E.D. Pa. 2000); Reilly v. Gould, Inc., 965 F. Supp. 588, 596 (M.D. Pa. 1997); Clay v. Am. Tobacco Co., 188 F.R.D. 483 (S.D. Ill. 1999).  The class must be sufficiently identifiable without being overly broad.  See Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977); Guillory v. Am. Tobacco Co., No. 97-C-8641, 2001 WL 290603, at *2 (N.D. Ill. Mar. 20, 2001) (stating that a well-recognized prerequisite to class certification is that the proposed class must be sufficiently definite and identifiable).

Overbroad class descriptions violate the definiteness requirement because they "include individuals who are without standing to maintain the action on their own behalf." Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 580 (N.D.Ill. 2005) (noting that class identification insures that those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief).

Accordingly, the Court first must determine whether a precisely and appropriately defined class exists and whether the named Plaintiffs are members of the proposed class. Kline, 196 F.R.D. at 266; see also E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). "This initial inquiry on class definition is distinct from the analysis required by Federal Rule of Civil Procedure 23." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 n.8 (E.D. Pa. 2000). Factors to consider include: (1) whether there is "a particular group that was harmed during a particular time frame, in a particular location, in a particular way;" and (2) whether class membership has been defined "in some objective manner." Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451, 455 (D.N.J. 2009) (citing Bentley v. Honeywell Int'l Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)). Certification should be denied when determining membership in the class would essentially require a mini-hearing on the merits of each case. Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009) (citing Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (denying certification of a class asserting violations of the Telephone Consumer Protection Act of 1991 where Plaintiffs defined the proposed class as "all residents and businesses who have received unsolicited facsimile advertisements")). See also Benefield v. Int'l Paper Co., 270 F.R.D. 640, 644-45 (M.D. Ala. 2010) (concluding that it was "not administratively feasible for the court to determine whether a particular individual meets the class definition," where "plaintiffs's expert evidence d[id] not support a determination of

class-wide contamination," and there was a lack of facial evidence of unique diminution in property value); Kondratick v. Beneficial Consumer Disc. Co., No. 04-4895, 2006 WL 305399, at *7 (E.D. Pa. Feb. 8, 2006) ("To determine if an individual is a class member, a court must be able to do so by reference to the class definition . . . If determining class membership requires a mini-hearing on the merits of each class member's case, the proposed class definition and class action are untenable."); Kline, 196 F.R.D. at 266 (holding that plaintiffs must minimally define the class "in a way that enables the court to determine whether an individual is a class member").

Plaintiffs have proposed a stigma class consisting of "all individuals and/or entities who reside in and/or own real property within a 2,500 foot radius of [the] service station." See Mot. for Class Cert. As have other courts, to determine if this class is ill-defined and/or overbroad, I look to see if there is a reasonable relationship between Plaintiffs' proposed geographical boundary and the Defendants' allegedly harmful activities. See, e.g., Brockman v. Barton Brands, Ltd., No. 3:06-cv-332, 2007 WL 4162920, at *4 (W.D. Ky. Nov. 21, 2007) ("[C]ourts define classes by geographical boundaries, but in such circumstances, courts often seek a reasonable relationship between the proposed boundary and the defendants' allegedly harmful activities. Regardless, courts have rejected proposed classes where plaintiffs failed to identify any logical reason . . . for drawing the boundaries where they did."); Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 62 (S.D. Ohio 1991) (holding evidence of dispersion of pollutant must support the chosen geographic area); Daigle v. Shell Oil Co., 133 F.R.D. 600, 603 (D. Colo. 1990) (requiring proposed boundaries to "relat[e] to the defendants' activities"). This is not, as Plaintiffs argue, a "merits" issue. Duffin v. Exelon Corp., No. 06-cv-1382, 2007 WL 845336 (N.D. Ill. March 19, 2007) (expressly distinguishing between a determination that property damage had occurred (a merits issue) and a determination that properties in the class area were

even potentially contaminated).

Plaintiffs' proposed class is, on its face, unrelated to the detection of MTBE in properties' water – i.e., "physical damage" to a property.  Instead, Plaintiffs' proposed class includes properties simply because they exist, irrespective of any actual connection to Defendants' activities.[5]  The Court does not at this stage require Plaintiffs to adduce definitive evidence about the specific amount and effect of MTBE dispersion.  However, to enable this Court to conclude that there is a reasonable relationship between the relevant MTBE release and the proposed class area, Plaintiffs need to adduce some evidence of dispersion that indicates MTBE may have traveled, or will ever travel, near a radius of 2,500 feet.  Here, only 17 properties within the proposed class have ever actually tested positive for any level of MTBE, and only three of those have ever exceeded the PDEP aesthetic concentration level.  The locations of those properties are nowhere near the 2,500 foot radius, or even logically reasonably related to that boundary.  Moreover, Plaintiffs do not offer a dispersal model or a concrete expert opinion as to the extent or eventual movement of the alleged MTBE plume (in *any* particular direction within the arbitrary 2,500 foot zone).  Hrg. Tr. at 61.  Indeed, Plaintiffs' hydrogeologist has admitted that he cannot yet opine as to the spread of MTBE beyond a much more limited geographic area, and that he does not have specific evidence that would currently link the much larger proposed class area to an actual spread of MTBE from the NLR Sunoco.  Hrg. Tr. at 59-60.  Specifically, Mr. Perry admitted that in using the 2,500 foot radius, he was "following what [the] attorneys have told [him] to do," rather than having a specific basis for concluding that the entire 2,500 foot area is (or ever might be) contaminated with MTBE.  Id. at 59-60.  Indeed, on cross-examination Mr.

---

[5]  Plaintiffs' proposed class would even encompass mere "residents" who do not even own the properties that must be harmed for purposes of stigma damages.

Perry conceded that it was "correct" that he was unable to "state that any particular property has had, has or will have detectible levels of MTBE, other than [the 17 properties which had tested positive,]" and that "the only properties [he knew] that ha[d] been impacted by MTBE [we]re those [17.]" Id. at 61, 70.

In this case, most of the few sites positive for MTBE are within 750 feet of the NLR Sunoco and a very few extend up to approximately 1,500 feet. Plaintiffs do not have evidence of present or past contamination to near a 2,500 foot radius, and Plaintiff's hydrogeologist expert has given insufficient opinions as to the progress of any MTBE plume in relationship to that radius.[6] Id. at 58-60. The Court has reviewed the record and listened to counsel in an effort to discover a reasonable and sufficient evidentiary relationship between the geographic boundaries of the proposed class and the alleged MTBE exposure area. Though Plaintiffs often rhetorically described the proposed class definition as "objectively reasonable," I find that they do not offer sufficient evidence that the MTBE has or will spread any particular direction from the NLR Sunoco for a distance of up to 2,500 feet . After an extended period of discovery and preparation, what I find noteworthy about Plaintiffs' Motion for Class Certification is the *lack* of evidence linking the spread of MTBE to the entire proposed class area. At bottom, Plaintiffs' Motion rests upon: (1) complaints of residents in a limited area; (2) arbitrary recitals of MTBE dispersal(s); and (3) Mr. Perry's opinions that (a) it is possible that MTBE from the NLR Sunoco is related to minor amounts of MTBE found on a limited number of properties within close proximity to the NLR Sunoco and (b) MTBE may continue to spread somehow, somewhere

---

[6] Plaintiffs' argument as to the quality of Defendants' investigation is unavailing. The investigation, lasting over a decade, has been monitored and approved as satisfactory by PDEP. This Court declines Plaintiffs' invitation to arbitrarily substitute its judgment for that of PDEP's administrative interpretations. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).

despite the decision by PDEP that remediation has been successful.  In short, Plaintiffs' arbitrary jump to a 2,500 foot radius, without more support, is untenable for class certification purposes. This unrelated boundary is not evidence "that something occurred to distinguish the members of the [proposed] class from the general public." Bentley, 233 F.R.D. at 479 (S.D. Ohio 2004) (citing Boggs, 141 F.R.D. at 60).  To the contrary, it is likely that the vast majority of putative class members would be property owners who have never encountered any exposure whatsoever to MTBE (nor even border the few landowners who have ever tested positive).

     I therefore must conclude that, viewed through the appropriate lens, the proposed class is simply far too broad.  The basis for Plaintiffs' 2,500 foot geographic boundary is arbitrary and not reasonably related to evidence of record concerning MTBE contamination.  See, e.g., Burkhead v. Louisville Gas & Elec. Co., 250 F.R.D. 287, 293-94 (W.D. Ky. 2008) (concluding there was an insufficient evidentiary relationship where the class was defined as individuals residing within a two mile radius of plant but there was no evidence that contaminants might have spread in all directions from plant for a distance of up to two miles); Duffin, 2007 WL 845336, at *3 (denying class certification in part because there was no evidence of class-wide contamination justifying a class encompassing over 2,500 properties, because Plaintiffs had failed to provide evidence that tritium contamination was present throughout the class area);[7] Boggs, 141 F.R.D. at 61 (holding that "[t]he fact that radioactive materials have escaped the

---

[7] Duffin was decided subsequent to, and is distinguishable from, Mejdreck v. Met-Coil Sys. Corp., No. 01-C-6107, 2002 U.S. Dist. LEXIS 14785 (N.D. Ill. Aug. 12, 2002), a case upon which Plaintiffs rely.  There was evidence of area-wide contamination in Mejdreck.  Judge Pratter of this District also declined to accept the rationale of Mejdreck in Gates.  See Gates, 265 F.R.D. at 233-34.  Plaintiffs' reliance on Leib v. Rex Energy Operation Corp., No. 06-cv-802, 2008 U.S. Dist LEXIS 102847 (S.D. Ill. Dec. 19, 2008) is also misplaced.  In Leib, the plaintiffs presented a dispersion modeling study to establish a reasonable relationship between the evidence of contamination and the proposed class area.  Here, Plaintiffs' hydrogeologist has not offered any such specific study.  See Hrg. Tr. at 61.

confines of the plant, is, by itself, not sufficient to justify defining the class to include everyone who lives or owns property within six miles of the plant's boundaries"); Daigle, 133 F.R.D. at 602-03 (denying certification of class alleging exposure from toxic waste disposal pond contaminants where scope of proposed class was not defined by defendants' activities, but instead by "arbitrarily . . . drawn lines on a map").  As in Duffin, without class-wide contamination evidence, Plaintiffs here are left with a speculative class.  Compare Duffin, 2007 WL 845336, at *5 with LaBauve v. Olin Corp., 231 F.R.D. 632, 638 (S.D. Ala. 2005) (certifying a subclass based on scientific air dispersion modeling that indicated a fixed geographical zone of a chemical plant's airborne contaminants); and Boggs, 141 F.R.D. at 62 (certifying class where expert testimony about level of exposure up to geographical boundary established "reasonable relationship"); and Wehner v. Syntex Corp., 117 F.R.D. 641, 643 (N.D. Cal. 1987) (approving a class of property owners based on a defined model).[8]

**B.     Rule 23(a)**

**1.     Numerosity**

Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No single magic number exists satisfying

---

[8] Plaintiffs attempt to rely upon Pennsylvania's Storage Tank and Environmental Remediation Standards Act, 35 P.S. § 6026.101 et seq. ("Tank Act"), which includes a 2,500 foot distance from the site of a release for the purposes of a statutory presumption of liability for damages.  However, the Tank Act's presumption of liability is inapplicable here, as Plaintiffs have not established that Defendants are the current owners of the NLR Sunoco (as opposed to, e.g., former owners or mere franchisors).  See U.S. v. Sunoco, Inc., 501 F. Supp. 2d 656, 669 ("[T]he Superior Court held that the Tank Act's presumption of liability may not be used against a former owner.") (citing Juniata Valley Bank v. Martin Oil Co., 736 A.2d 650, 658 (Pa. Super. 1999)).  Even if the presumption were more than a red herring, however, it is: (1) limited to being a presumption of liability, not of contamination, and (2) rebuttable.  35 Pa. C.S. § 6021.1311(a). As such, the Tank Act does not dictate the appropriate class area here, and the Court cannot supplant the required class definition analysis with mere reference to its provisions.

the numerosity requirement." Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007) (internal citation omitted). However, our Court of Appeals often favorably considers classes of 40 or more. See Gates, 265 F.R.D. at 215 (citing Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001)). Plaintiffs have alleged that there are approximately 179 properties in the proposed class as they originally geographically defined it – i.e., within a 2,500 foot radius of the NLR Sunoco. However, because this class definition is too overbroad, I cannot accept Plaintiffs' numerosity argument. Plaintiffs have failed to provide evidence that MTBE contamination is present throughout the class area. As discussed, the evidence shows that only 17 properties within the proposed class area have ever had a presence of MTBE that can arguably be related to a plume of MTBE emanating from the NLR Sunoco. Those properties are neither uniformly contiguous to the NLR Sunoco nor to each other, and only three have ever shown levels above the PDEP aesthetic limit. As such, most of the proposed class's properties fall well within safe groundwater standards set by PDEP. For the purposes of deciding this Motion, it is not appropriate for the Court to determine the MTBE level that constitutes "contamination," or to determine what contamination level constitutes property damage. However, I find that Plaintiffs offer insufficient evidence that groundwater containing MTBE has contaminated properties throughout the proposed class area. This is clearly exemplified by the testimony of Mr. Perry and the exhibit maps entered into evidence at the motion hearing. See Hrg. Tr. at 6-88, Pl's Ex. 1; Def's Ex. 1-5.

According to Plaintiffs, many properties are in contaminated or soon-to-be contaminated areas. However, that estimate is purely speculative, and conclusory allegations do not satisfy Rule 23(a)(1)'s numerosity requirement. Plaintiffs' argument that numerosity will be shown after additional discovery is unavailing. It is Plaintiffs' burden to establish the appropriateness of

class certification, and they have had many months to produce evidence supporting their Motion. See Duffin, 2007 WL 845336, at *5 (internal citations omitted) (concluding same). For the purposes of Rule 23(a), impracticability of joinder does not mean impossibility; Plaintiffs need only prove it would be inconvenient and difficult to join the proposed class members. They have not done so. Id. at *5 (citing Bethards v. Bard Access Sys., Inc., No. 94 C 1522, 1995 WL 75356, at *3 (N.D. Ill. Feb. 22, 1995)).

**2. Commonality**

To satisfy the commonality requirement under Rule 23(a)(2), plaintiffs must show the existence of at least one question of law or fact common to the class. The commonality threshold is low, Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996), and does not require "an identity of claims or facts among class members," Johnston, 265 F.3d at 184; see also Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 n.15 (3d Cir. 1998). Defendants do not contest commonality. Plaintiffs identify issues common to the class, including whether Defendants damaged their property and/or lowered their property values by releasing MTBE into the groundwater. The commonality requirement is satisfied.

**3. Typicality**

To evaluate typicality under Rule 23(a)(3), the Court must inquire "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Beck v. Maximus, Inc., 457 F.3d 291, 295–96 (3d Cir. 2006) (quotation omitted). "The typicality requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." Gates, 265 F.R.D. at 216 (quotation omitted). "The inquiry assesses whether the named plaintiffs have incentives that align with those of absent class

members so that the absentees' interests will be fairly represented." Id. Stated differently, Plaintiffs' claims are typical of the class if they arise from the same event, practice, or course of conduct giving rise to class members' claims, and the claims are based on the same legal theory. Barabin v. Aramark Corp., 210 F.R.D. 152, 159 (E.D. Pa. 2002).

     Plaintiffs contend typicality is met because Defendants' conduct is central to all proposed class members' claims. Plaintiffs argue that, like the other prospective class members, their properties are located in the area contaminated or stigmatized by release of MTBE from the NLR Sunoco site. Defendants dispute typicality on the grounds that the Plaintiffs' properties are of different types and at different locations than other proposed class members. Although the overbroad class definition clouds the issue, I find that Plaintiffs have demonstrated typicality. The claims of the class representatives are similar to those of the other members of the proposed class. All of the claims arise from and challenge the same course of conduct (i.e., the discharge of MTBE from the NLR Sunoco); the named Plaintiffs do not allege that they were singled out in any way. While the extent and value of any purported damages may differ across property types and gradient location, this does not alone negate a finding of typicality where the cause of Plaintiffs' injuries is an alleged common wrong. Gates, 265 F.R.D. 208, 216-17; see also In re Prudential Ins. Co., 148 F.3d 283, 312 (3d Cir. 1998) (holding that "[t]he various forms [the class representatives'] injuries may take do not negate a finding of typicality, provided the cause of the injuries is some common wrong"). Here, the interests of the named Plaintiffs are similar to those of the class members, and generally align with the interests of the classes for purposes of the typicality inquiry. Although the class members' claims may be factually different, Plaintiffs have alleged one course of conduct giving rise to those claims, all of which are based on the same legal theory. This is sufficient. See Barnes, 161 F.3d at 141; Gates, 265 F.R.D. at 217; Duffin,

2007 WL 845336, at *6; Arch v. Am. Tobacco Co., Inc., 175 F.R.D. 469, 478–79 (E.D. Pa. 1997).

**4.     Adequacy**

The purpose of Rule 23(a)(4) is to ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Beck, 457 F.3d at 296 (quoting Amchem, 521 U.S. at 625).  It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." Id. (internal quotation omitted). Thus, the Court "must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." Johnston, 265 F.3d at 185 (internal citation omitted).[9]

Defendants argue that the named Plaintiffs are inadequate because there may be a need for different plaintiffs to advance conflicting theories of release and transport of MTBE depending on whether the subject properties are down-gradient, cross-gradient, or up-gradient from the NLR Sunoco, and depending on where those properties are located in connection to other potential sources of MTBE.  I do not find this speculative argument persuasive.  The record establishes that Plaintiffs intend to advance one theory of release.  There is nothing particularly unique about the named Plaintiffs' properties – they represent both residential and commercial properties, which together comprise the majority of the proposed class.  Under these

---

[9] Class counsel has vigorously pursued this lawsuit, and they appear to be appropriately mindful of applicable professional responsibility duties. Other courts have so held. See Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 149 (E.D. Pa. 2000).  As such, the Court finds no reason to question the ability of Plaintiffs' counsel to conduct this litigation.

circumstances, the adequacy requirement of Rule 23(a)(4) is met.  See Duffin, 2007 WL 845336, at *6 (finding same where the entire class, including the named plaintiffs, asserted the same legal theories based on the same general nucleus of operative facts).[10]

## IV.     Conclusion

The proposed overbroad and speculative class would present "burdens that are incongruous with the efficiencies expected in a class action." Kline, 196 F.R.D. at 268.  Because Plaintiffs fail to meet all of the requirements of Rule 23(a), their Motion for Class Certification motion fails.[11]  "Where the court finds, on the basis of substantial evidence as here, that there are

---

[10] Defendants briefly argue that there are property owners who *may* believe that they have suffered no damages and do not wish to have their property value negatively impacted as a potential result of this litigation.  In support of this argument, Defendants rely upon the facts that: (1) certain property owners have in the past refused, for unknown reasons, the opportunity to have their well water tested; (2) part of Plaintiffs' case (based on a theory under the Pennsylvania Real Estate Seller Disclosure Act, 68 PA. CONS. STAT. §§ 7301 et seq. (2001)) is based on the idea that some or all class members have an MTBE disclosure obligation that might cause potential buyers to lower their offers, and, as a result, certain class members with no MTBE contamination might dispute that such a MTBE disclosure requirement exists, see Wilson Dep. at 44-45; and (3) at least one neighbor approached Plaintiff Neil to question whether his class action would cause property values to fall.  See Neil Dep. at 64, 73, 76-77, 154.  I find these reasons generally speculative and in any event insufficient to demonstrate inadequacy by a preponderance of the evidence.

[11] I note that even if Plaintiffs could meet all of Rule 23(a)'s requirements, the Motion would still fail because they cannot satisfy Rule 23(b).  Rule 23(b)'s superiority element cannot be met given the Court's numerosity determination.  At most, Plaintiffs have shown approximately 17 property owners are affected by possible MTBE contamination. A class action is not necessary to address the claims of so few.  See Gates, 265 F.R.D. at 215 (generally, forty or more plaintiffs required to certify a class); Duffin, 2007 WL 845336, *7 (same).  Judicial economy and efficient litigation management would not be maximized by certifying such a limited class.  Id.  Even assuming superiority, Plaintiffs have not shown common questions of the class predominate over questions affecting individual members.  Here, there is an overbroad class without evidence establishing class-wide contamination.  There are factual differences between class members whose properties are positive for MTBE and those that are not.  Significant trial time would likely be devoted to determining separate issues of liability regarding individual properties.  Duffin, 2007 WL 845336, at *6; Daigle, 133 F.R.D. at 604.  While this concern did not mandate rejecting Plaintiffs' typicality argument, the predominance element is more demanding.  Id.; Amchem, 521 U.S. at 623-24.

serious problems now appearing, it should not certify the class merely on the assurance of counsel that some solution will be found." In re Hydrogen Peroxide, 552 F.3d at 318 (quoting Windham v. Am. Brands, Inc., 565 F.2d 59 (4th Cir. 1977)).

The Motion will be denied. An appropriate Order follows.